# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BEATRICE M. CHIASSON,**<br>**individually and on behalf of**<br>**her deceased husband,** | **CIVIL ACTION** |
| **DONALD J. CHIASSON, SR., et al.** | **NO. 05-5221** |
| **VERSUS** | |
| | **SECTION: C(3)** |
| **HONEYWELL INTERNATIONAL INC.,**<br>**et al.** | |

## ORDER AND REASONS[1]

Before the Court is a motion to remand merged with a motion to add defendants filed by

the Plaintiffs, Beatrice M. Chiasson, individually and on behalf of her deceased husband, Donald

J. Chiasson, Sr. ("Plaintiffs").  Defendants Ford Motor Company and General Motors

Corporation  ("Defendants"), who joined removal of this action to this Court on the basis of

diversity of citizenship, oppose the motion.  After considering the memoranda of counsel, the

record, and the applicable law, the Court determines that Plaintiffs' motion to remand is

GRANTED.

---

[1] Skelly McCay, a second year law student at Tulane University Law School, assisted in
the research and preparation of this decision.

**Facts and Procedural History**

From 1958 to 1994, Donald Chiasson ("Chiasson") worked as a mechanic at Sydney's Texaco, Inc. ("Sydney's"), an automobile repair and service station in Marrero, Louisiana.[2]  Rec. Doc. 71-6, p. 2.  Over the course of his almost forty years at Sydney's, Chiasson regularly worked on brakes and clutches that contained asbestos.  Rec. Doc. 1, p. 29.  Plaintiffs allege that Chiasson's exposure to asbestos and asbestos-containing products during his employment at Sydney's caused him to contract malignant mesothelioma, of which he died on July 29, 2004.  Rec. Doc. 1, p. 29.  Plaintiffs claim that the Defendants manufactured, distributed, warranted, and installed the asbestos-based  products to which Chiasson was exposed.[3]  Rec. Doc. 1, p. 29.  On May 17, 2004, Beatrice Chiasson filed suit individually and on behalf of her deceased husband in the 24th Judicial District of Jefferson Parish, State of Louisiana.  The several Defendants to that civil action filed a Notice of Removal to this Court on November 1, 2005,

---

[2] The Court notes that there is some discrepancy between the parties' account of Chiasson's tenure at Sydney's.  Plaintiffs allege that Chiasson worked at Sydney's Texaco from 1958 to 1997 in their motion to remand and from 1958 to 1994 in their original complaint.  In both documents, Plaintiffs refer to Sydney's Texaco, Inc., a corporation formed from the former Sydney's Texaco, a partnership, in 1987.  Defendants alert the Court to the inaccuracy of stating that Chiasson worked for Sydney's Texaco, Inc. from 1958 to 1997.  However, neither party disputes that Sydney's Texaco, Inc. is the party named in the original complaint and a non-diverse defendant in the instant removal.

[3] Named as Defendants are The Goodyear Tire & Rubber Co., General Motors Corp., Genuine Parts Co. D/B/A Napa, Eagle, Inc., BF Goodrich Co., Borg-Warner Corp., Chrysler Corp., Dana Corp., Eaton Corp., Firestone Tire & Rubber Co., Ford Motor Co., Lear Siegler, Inc., Mack Trucks, Maremont Corp., Kelsey Hayes Co., Rockwell International, EIS Brake Division, Shaffer, Inc., Sidney's Inc.  *See* Rec. Doc. 1.

claiming complete diversity of the parties and asserting this Court's jurisdiction under 28 U.S.C. § 1332. Rec. Doc. 1.[4] Neither party contests that the minimum amount in controversy of $75,000.00 has been met. *See* Rec. Doc. 1, p. 4. Plaintiffs, Louisiana domiciliaries, timely filed a motion to remand, presumably under 28 U.S.C. § 1447(c), and to add defendants on November 18, 2005. Rec. Doc. 18. Pending this Court's ruling on that motion, the Judicial Panel on Multidistrict Litigation ordered that the matter be transferred to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1407. Rec. Doc. 54 and Rec. Doc. 55. Plaintiffs aver that discovery conducted under the supervision of that court revealed that Joseph Bourgeois, Elaine Bourgeois (owners and operators of the incorporated "Sydney's" after 1987), and Travelers Insurance should be added as Defendants. On April 8, 2008, the MDL Panel, acting on the recommendation of the transferee court, remanded the case to this Court. Rec. Doc. 66.

Plaintiffs subsequently refiled a motion to remand these proceedings to state court. Rec. Doc. 71-5. In opposition, Defendants argue that Sydney's is a fraudulently joined party whose citizenship cannot be considered for diversity purposes. Defendants argue that Plaintiffs seek to fraudulently join other non-diverse parties solely to defeat diversity. Rec. Doc. 82.

**Law and Analysis**

The parties may neither consent to nor waive federal subject matter jurisdiction and bare

---

[4] As it was stated in Plaintiffs' original Petition for Damages, the case was not removable pursuant to this Court's jurisdiction under 28 U.S.C. § 1332 because of claims asserted against a Louisiana defendant, Carquest Auto Parts ("Carquest"). On August 8th, 2005, however, Plaintiffs and Carquest filed a joint motion dismissing all claims against Carquest without prejudice, thereby allowing removal. See Rec. Doc. 1, p. 3.

assertions by the removing party are insufficient to invest a federal court of jurisdiction.  *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848 (5th Cir. 1999); *Association Nacional De Pescadores A Pequena Escala O Artesanales De Colombis, S.A.,* 988 F.2d 559 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 685 (1995).  It is the recognized burden of the party invoking jurisdiction "both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegations."  *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938) (citing *McNutt v. General Motors Corp.*, 298 U.S. 178, 182-189 (1936); *Diefenthal v. Civil Aeronautics Board*, 681 F.2d 1039 (5th Cir. 1982), *cert. denied*, 459 U.S. 1107 (1983).  The Court is mindful that the removal statutes are to be strictly construed against removal.  *See Shamrock Oil & Gas Corp., v. Sheets*, 313 U.S. 100 (1941); *Brown v. Demco, Inc., 792 F.2d 478, 482* (5th Cir. 1986).  Consequently, when subject matter is doubtful, remand is appropriate.  14B C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 3d § 3739.

Generally, all defendants must join in the notice of removal.  *See Doe v. Kerwood*, 969 F.2d 165, 166-168 (5th Cir. 1992); 28 U.S.C. 1446(a); 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 107.11[1][c], at 107-36 (3d ed. 2007).  However, fraudulently joined defendants do not bar removal, and their existence is disregarded for the purposes of determining diversity.  *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999); MOORE'S, ¶ 107.14[2][c], at 107-56.  Plaintiffs in the instant case, who are Louisiana domiciliaries, argue that there are two non-diverse defendants on the face of the Complaint, Sydney's and Eagle Inc. ("Eagle"), both Louisiana citizens, making Defendants' removal improper and requiring this

4

Court to remand.  Rec. Doc. 71-6, p. 2.  Defendants maintain that Sydney's and Eagle have been fraudulently joined to the present litigation in order to destroy diversity.  Rec. Doc. 1, p. 3, 8-10.  Specifically, Defendants argue that Plaintiffs can state no cause of action against Sydney's Texaco, Inc. (the corporate successor to the former Sydney's Texaco, a partnership) that would entitle them to relief in state court.  Rec. Doc. 82, p. 2-4.  Defendants aver that Eagle is a fraudulently joined party against whom Plaintiffs have failed to make any factual allegations or establish any theory of liability.  *Id.* at 4-7.

Plaintiffs move to amend their complaint to add as Defendants Joseph Bourgeois, Elaine Bourgeois, Sydney Bourgeois, Jr. and Travelers Insurance.  Plaintiffs argue that they have real claims against the Bourgeois's, Louisiana citizens, 1) individually, 2) in Elaine and Sydney Jr.'s capacity as personal representatives of Sydney Sr., 3) in Elaine and Joseph's capacity as corporate officers of Sydney's, executive officers in charge of safety, and successors to Sydney Bourgeois, Sr., 4) in Elaine's capacity as personal representative of Sydney Sr.'s estate and of Sydney's Texaco, Inc. as successor to Sydney's Texaco.  Rec. Doc. 71-6, p. 3.  Plaintiffs urge that the need to add these defendants arose through the course of discovery performed under the aegis of the United States District Court for the Eastern District of Pennsylvania.  Defendants argue that Plaintiffs' motion to introduce additional non-diverse parties into this case amounts to an attempt to defeat federal jurisdiction because Plaintiffs have no claims against the Bourgeois's for which a state court could provide relief.  *Id.* at 7-8.

The central issue in this dispute is whether Defendants Eagle and Sydney's were

improperly joined to defeat diversity jurisdiction.[5]  Any civil action may be removed from state court to federal court if it is proven that the federal court has original jurisdiction.  *See* 28 U.S.C. § 1441 (2006).  The district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different states.  *See* 28 U.S.C. § 1332 (2006).  For diversity jurisdiction to attach, there must be complete diversity, i.e. the citizenship of every plaintiff must be diverse from the citizenship of every defendant.  *Gurtler v. Northwestern Mutual Insurance* Co., Civil Action No. 08-818, 2008 WL 2277847, at * 1 (E.D. La. May 29, 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).

In removal actions, the removing party bears the burden of establishing that federal jurisdiction exists.  *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995), *cert. denied*, 516 U.S. 865 (1995).  The standard for determining when a defendant has been improperly joined is well established in the Fifth Circuit.  To demonstrate improper joinder, the party seeking removal must show the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Smallwood v. Illinois Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2003); *see also B., Inc. V. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981).  Courts examine "[i]f there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.'"  *Smallwood*, 385 F.3d at 589 (citing *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993).  Furthermore, the Fifth Circuit has stated that "[i]f

---

[5] The Fifth Circuit now refers to "fraudulent joinder" as "improper joinder" and so the Court will use that language.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 n. 1 (5th Cir. 2004); *see also O'Neil Prod., Inc. v. ABC Sports, Inc.*, 2007 WL 1169357, at *1, fn. 7 (E.D. La. April 19, 2007) (Berrigan, J.).

6

the plaintiff has any possibility of recovery under state law against the party whose joinder is questioned, then the joinder is not fraudulent in fact or law." *Rich III v. Bud's Boat Rentals, Inc.*, Nos. Civ.A. 96-3279, Civ.A. 97-2612, Civ.A. 97-2723, 1997 WL 785668, at *2 (E.D. La. Dec. 18, 1997) (citing *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)).

A party is considered fraudulently joined when the plaintiff has not or cannot state a claim for relief against the named individual or entity under the applicable substantive law or does not intend to secure a judgment against that defendant. *Englande v. Glaxo Smithkline*, 206 F. Supp. 2d 815, 817 (E.D. La. 2002) (citing *Erdy v. American Honda Co., Inc.*, 96 F.R.D. 593, 595 (M.D. La. 1983)). The key inquiry to a claim of fraudulent joinder is whether the facts as alleged support the plaintiff's substantive claims against the non-diverse defendants. *Englande,* 206 F. Supp. 2d at 819 (citing *B., Inc.*, 663 F.2d at 545). Stated differently, a court may find fraudulent joinder if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant . . ." *Smallwood*, 385 F.3d at 572; *see also Melder v. Lexington Corp.*, 404 F.3d 328, 330 (5th Cir. 2005) ("[A]t issue is whether Defendants have established that there is no reasonable basis Plaintiff might be able to recover under Louisiana state law against the non-diverse defendant . . ." A "mere theoretical possibility of recovery" does not preclude a finding of improper joinder. *Smallwood*, 385 F.3d at 572.

The Court's "prediction" of the success of a plaintiff's claims in state court can be made in two ways: (1) by undertaking a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim against the in-state defendant or (2) by assessing whether a claim has been stated by misstated or omitted discrete facts determinative of the propriety of joinder. *Id.* at

573.  A minimal piercing of the pleadings may be undertaken; but courts "caution that a summary [judgment] inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 574.  "[T]he inability of the court to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.*  Ultimately, any ambiguities in the pleadings are to be construed against removal, as the removal statute should be strictly construed in favor of remand. *Englande*, 206 F. Supp. 2d at 817 (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)).  Because the improper joinder doctrine is a narrow exception to the rule that diversity jurisdiction requires complete diversity, the burden of demonstrating improper joinder is a heavy one. *Smallwood*, 385 F.3d at 574.

In their original Petition for Damages, Plaintiffs allege that Sydney's is liable for several "acts of negligence" which caused Plaintiffs damages, excluding claims for wrongful death and loss of consortium.  Rec. Doc. 1, p. 18.  All of those claims, which include failure to maintain a safe work environment, failure to warn of the dangers of the premises, and failure to provide petitioner with proper safety equipment, relate to Chiasson's alleged exposure to asbestos during his employment with Sydney's.  Plaintiffs acknowledge that there is a statutory bar in Louisiana to mesothelioma claims against employers that arise after 1975, but they argue that part of Chiasson's workplace exposure to asbestos occurred between 1958 and 1974, thus allowing their claim against Sydney's.  Rec. Doc. 71-6, p. 3.  The statute in question is La. R.S. § 23:1031.1, which provides workers' compensation coverage for occupational diseases, as redefined by a 1975 amendment thereto.  The Supreme Court of Louisiana has provided a relevant history of the statute, starting with its passage into law in 1952:

With the passage of 1952 La. Acts 532, every employee who was "disabled because of the contraction of an occupational disease" was entitled to workers' compensation "the same as if said employee received personal injury by accident arising out of and in the course of his employment." The statute provided a definition of an "occupational disease," which stated, in pertinent part, that "[a]n occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed." LA. REV. STAT. 23:1031.1(A) (1952).  This exclusive list included diseases caused by contact with specific substances, namely the diseases of contact poisoning from enumerated sources, asbestosis, silicosis, dermatosis, and pneumoconiosis. LA. REV. STAT. 23:1031.1(A) (1952) . . . Although the 1952 and 1958 enactments listed specific occupational diseases, 1975 La. Acts 583 revised LA. REV. STAT. 23:1031.1(A) (1952) to amend the definition of occupational disease *by removing the list of specific diseases for which there was coverage under workers' compensation* and substituted the following:

"An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease . . ." Therefore, we hold that LA. REV. STAT. 23:1031.1(D) must be read with reference to the broader definition of "occupational disease" enacted in the 1975 revision of [the statute].

*O'Regan v. Preferred Enterprises, Inc*., 758 So.2d 124, 129-131 (La. 2000).

Since its 1975 amendments, La. R.S. § 23:1031.1(A) has been read to encompass mesothelioma as an occupational disease for the purposes of workers' compensation law.  *Austin v. Abney Mills, Inc.*, 824 So.2d 1137, 1140-41 (La. 2002).  Furthermore, under Louisiana law, "workers' compensation benefits are the exclusive remedy of an employee for an injury or compensable sickness or disease arising out of and in the course of employment, except for those resulting from intentional acts."  *Id.* at 1141 (citing LA. REV. STAT. 23:1032).  The Louisiana State Legislature amended La. R.S. § 23:1032 in 1976 to grant statutory immunity from tort liability arising out of § 23:1031.1 to "any officer, director, stockholder, partner, or employee," of the employer.  *Id.*  Plaintiffs aver that Chiasson's alleged pre-1975 exposure to asbestos gives

9

rise to a cause of action against Chiasson's employer, Sydney's, because, during that period, Louisiana law did not consider mesothelioma to be an occupational disease for which workers' compensation would be the sole source of redress, with employer tort immunity in place.  Rec. Doc. 71-6, p. 3.  Because Louisiana law clearly precludes recovery on suits arising from asbestos exposure the occurs after 1975, Chiasson's pre-1975 exposure and the claims to which it gives rise are this Court's immediate concern.

In opposition to Plaintiffs claims, Defendants contend that no liability attaches to Sydney's Texaco, Inc. or to the former Sydney's for Plaintiffs' damages under Louisiana law, and so its joinder is improper.  First, Defendants argue that, under Louisiana law, workers' compensation immunity extends even to a pre-1975 employer.  Recognizing the post-1975 tort immunity to which Sydney's is entitled, Defendants point to a "split in the State Circuits as to claims arising from exposures predating the 1975 amendments to the workers' compensation statutes."  Rec. Doc. 82, p.3.  To call the current posture of Louisiana courts on this issue a "split" is something of an understatement.  It is more accurate to say that Louisiana law is completely unsettled and that the minimal guidance that the Louisiana Supreme Court has provided, discussed below, favors a position contrary to that of the Defendants.  *See Austin v. Abney Mills, Inc.*, 824 So.2d 1137 (La. 2002).  Because the posture of Louisiana law will ultimately decide whether Plaintiffs have properly joined a non-diverse defendant and deserve to have their claims heard in state court, the Court must turn to the applicable law.

Defendants, in their motion opposing remand, rely on two state court decisions, one from the Louisiana Fifth Circuit Court of Appeals and one from the Louisiana Second Circuit, in asserting that Plaintiffs have no cause of action against Sydney's under Louisiana law.  In *Brunet*

*v. Avondale Indust., Inc.,* the Fifth Circuit affirmed the District Court for the Parish of Jefferson dismissing claims brought by a worker who was exposed to asbestos between 1950-1978.  The plaintiff's employer argued that it was immune from tort suit under La. R.S. § 23:1032 and that plaintiff's lung cancer, from which he died in 1998, was an occupational disease covered exclusively by workers' compensation under La. R.S. § 23:1031.1, as it was in effect during plaintiff's asbestos exposure.  772 So.2d 974, 977-78 (La. App. 5th Cir. 2000).  The Court held that employer immunity extended to cases arising out of asbestos exposure pre-dating 1975 and that for "a plaintiff's occupational disease to be covered under worker's compensation, his occupational disease need not be specifically listed by name in former R.S. 23:1031.1."  *Id.* at 981-82.  If the Fifth Circuit's interpretation of Louisiana workers' compensation law were joined by all other Louisiana Circuits, absent a definitive statement by the Supreme Court, perhaps the Court could accept Defendant's theory that Plaintiffs' claims are barred under state law.

However, Defendants only point to one other Louisiana case that follows the Fifth circuit's holding in *Brunet*.  In *Adams v. Asbestos Corp. Ltd.,* the Second Circuit held that La. R.S. § 23:1031.1 "was never intended to exclude a disease from coverage simply because it was not listed in the statute."  914 So.2d 1177, 1182 (La. App. 2nd Cir. 2005) (citing *Hicks v. Liberty Mutual Ins. Co.,* 165 So.2d 51 (La. App. 2d Cir. 1964).  The Court's reading of the law led it to affirm the trial court's ruling in favor of the plaintiff's employer on the grounds that plaintiff's exposure, despite occurring largely prior to the 1975 amendments to La. R.S. § 23:1031.1, was entirely addressed by worker's compensation.  *Id.* at 1183.  Like the Fifth Circuit, the Second Circuit determined that employers had workers' compensation immunity to claimed asbestos exposures dating back to 1952.  *Id.* at 1182.

11

These rulings by the Louisiana Fifth and Second Circuits were by no means first pronouncements on the extent to which state law barred claims against employers for asbestos related illnesses.  Indeed, in holding that the exclusivity of workers' compensation remedies extended to asbestos exposures occurring prior to 1975, the courts put themselves in stark opposition to every other Louisiana Circuit and, arguably, to the Louisiana Supreme Court. Before turning to the remaining statements on the matter by Louisiana courts, the Court notes that, since their respective decisions in *Adams* and *Brunet*, the Fifth and Second Circuits appear to have softened their position.  In *Bourgeois v. A.P. Green Indus.,* the Fifth Circuit affirmed the trial court's decision to overrule an employer-defendant's exception of no cause of action, holding that the 1976 amendments to La. R.S. § 23:1032 providing tort immunity to employers from asbestos related claims, had no retroactive effect on claims against executive officers of an employer-company arising from asbestos exposure pre-dating 1976.  841 So.2d 902, 909 (La. App. 5th Cir.).  The court, departing from its ruling in *Brunet*, held that "plaintiffs whose significant exposure was between 1952 and 1976 have an assertable negligence claim against [the employer's] executive officers" and that "the time of significant exposure, not the time of filing the claim, will determine which employees are entitled to assert a negligence action."  *Id.* at 909-910.[6]  The Fifth Circuit, in *Bourgeois*, made no reference to its earlier decision in *Brunet.*

In 2007, the Second Circuit ruled in favor of a mesothelioma plaintiff whose exposure to asbestos began in 1943, 9 years prior to the enactment of La. R.S. § 23:1031.  *Graves v. Riverwood Int'l Corp.*, 949 So.2d 576 (La. App. 2nd Cir. 2007).  The court noted that, prior to

---

[6] The Court notes that Plaintiffs in the instant case are asserting negligence claims in a survival action against Sydney's for asbestos exposure that occurred, at most, between the late 50's and the early 90's.

1952, there was no workers' compensation for any occupational disease and that where a worker contracted an occupational disease prior to 1952, he would be free to proceed against his employer in tort.  *Id.* at 585.  The court also observed, in agreement with other Louisiana courts, that, after 1975, mesothelioma was covered by La. R.S. § 23:1031, and maintained that its ruling in no way conflicted with its decision in *Adams*, where the plaintiff's exposure occurred after the enactment of La. R.S. § 23:1031.  *Id.* at 585, 588.  Although *Graves* arguably does not constitute an about-face from *Adams*, it required the Second Circuit to reflect on its general reliance on *Brunet*, in light of the rulings of other Louisiana courts and in light of the Fifth Circuit's ruling in *Bourgeois* that "the law in effect at the time of the tortious exposures applies if the evidence proves that the exposure were significant and resulted in the later manifestation of disease." *Id.* at 586 (citing *Bourgeois*, 841 So.2d 902).  Specifically, the court defended following *Brunet*, but cited two Fourth Circuit holdings that mesothelioma plaintiffs could pursue negligence actions against employers for asbestos exposure occurring before 1975 where the pre-1975 version of 23:1031 did not specifically include mesothelioma as a [workers' compensation] covered disease." *Id.* at 586.

The *Graves* decision, by the Second Circuit's own admission, reveals the extent to which whether Louisiana workers' compensation law obstructs asbestos litigation is far from settled.  For example, the Second Circuit cited the Louisiana Supreme Court's 1992 ruling that once a party's right of action accrues, due to significant exposure to asbestos, it becomes a vested property right that may not constitutionally be divested.  *Id.* (citing *Cole v. Celotex Corp.*, 599 So.2d 1058 (La. 1992).  Under Louisiana law, statutes enacted after a plaintiff acquires the right to sue cannot be applied retroactively to nullify that cause of action.  *Id.*  Specifically, "[i]f an

13

employee acquires the right to sue in tort for a non-covered occupational disease, he cannot later be divested of the right by subsequent legislative expansion of coverage for occupational disease." *Id.* The Second Circuit reasoned that its holdings in *Adams* and *Graves* are in accord with the current law, as long as it insists that the Louisiana legislature intended mesothelioma and asbestosis to be covered by pre-1975 workers' compensation statutes, thus barring claims for significant exposure to asbestos during that time. However, the court expressed that

> [t]he issue that has yet to be definitively decided by the Louisiana Supreme Court is whether mesothelioma fits within the 1952 [La. R.S. 23:1031] statute's definition of occupational disease such that an employer of a worker who contracted this asbestos-related disease *after 1952 but before 1975* would be entitled to tort immunity and liable only for workers compensation benefits to the injured employee.

*Id.* at 585-86 (citing *Powell v. Weaver*, 841 So.2d 742 (La. 2003)) (emphasis in original).

In the instant case, the Court is tasked with evaluating the relevant Louisiana law to determine if Plaintiffs have a cause of action against Sydney's, a non-diverse defendant, in state court, thus making Sydney's joinder proper and defeating the diversity from which this Court derives its jurisdiction.  Defendants would like the Court to take the Fifth Circuit's ruling in *Brunet* and the Second Circuit's ruling in *Adams* as definitive statements of what the law in the State of Louisiana is.  Rec. Doc. 82, p. 2-3.  Indeed, Defendants proffer an argument, based in *Erie* doctrine, that the Louisiana Fifth Circuit would have jurisdiction over this case, if appealed from a state trial court, and so the Court should look no further than the Louisiana Fifth Circuit's holding in *Brunet* to decide whether Plaintiffs have stated a claim for which Louisiana law could provide relief.  *Id.* at 4.  As an initial matter, the Court can find no support for Defendants' proposition that there is such a duty under *Erie*.  If anything, by limiting its findings to one case from one State Circuit, the Court would be remiss in its duty to thoroughly assess state law in

14

Plaintiffs' favor as is required of an improper joinder analysis.  *See LeBlanc v. Wal-Mart Stores*, Civ. A. No. 94-3430, 1994 WL 715982, at *1 (E.D. La. Dec. 21, 1994) (Berrigan, J.) (holding that, to prove improper joinder, there must be *no possibility* of recovery under state law and "uncertainties in controlling substantive law are read in favor of the plaintiff").  This proves especially true when a majority of Louisiana courts have handed down rulings that support a plaintiff being entitled to bring a negligence claim against his employer for asbestos exposure that occurred between 1958 and 1975, when La. R.S. § 23:1031 was amended.

        In *Bandon v. RJR Nabisco Inc.*, the United States Court of Appeals for the Fifth Circuit held that a court must approach substantive law within the context of improper joinder in a manner distinct from other contexts, contexts in which the court would "simply make the best determination that [it] can as to how the state courts would ultimately resolve the issue."  236 F.3d 282, 285 (5th Cir. 2000).  Quoting its decision in *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 175-76 (5th Cir. 1968), the court continued,

> Unlike the parties who joust for victory on who wins or loses, our sole concern is:
> Who tries this case.  State or Federal Court?  For to us we cannot escape the
> problem of removability . . . This is an *Erie* problem in part, but only part. In the
> usual diversity situation a Federal Court, no matter how difficult the task, must
> ascertain (and then apply) what the state law is.  But here the question is whether
> there is arguably a reasonable basis for predicting that the state law might impose
> liability on the facts involved . . .

*Id.* at 285-86.  The Federal Eighth Circuit has cited with approval the Fifth Circuit's holding that *Erie* doctrine has a limited role to play in improper joinder analysis.  *Filla v. Norfolk Southern Railway Co.,* 336 F.3d 806, 811 (8th Cir. 2003).  In *Filla*, the court emphasized that improper joinder analyses are unique because the court sitting in diversity must only decide whether, given the chance, a state court could rule for the plaintiff.  *Id.*  Reviewing an improper joinder claim,

> the district court should resolve all ambiguities in the current controlling
> substantive law in the plaintiff's favor . . . [h]owever . . . the court has no
> responsibility to *definitively* settle the ambiguous question of state law . . .
> [i]nstead , the court must simply determine whether there is a reasonable basis for
> predicting that the state's law might impose liability against the defendant. This
> determination is the essential function required of a district court in a fraudulent-
> joinder setting . . . in situations where the sufficiency of the complaint against the
> non-diverse defendant is questionable, "the better practice is for the federal court
> not to decide the doubtful question in connection with a motion to remand but
> simply to remand the case and leave the question for the state courts to decide."

*Id.* (quoting *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir.

1977) (emphasis in original).

In this jurisdiction, a court granted a plaintiff's motion to remand in a case similar to the

one presently before this court.  *See Young v. Taylor-Seidenbach*, No. Civ. A. 04-715, 2004 WL

1403399 (E.D. La. 2004) (Feldman, J.).  The plaintiff in that case, a worker exposed to chemicals

that allegedly caused his chronic lymphocytic leukemia and non-Hodgkin's lymphoma, claimed

that his cause of action was not barred by the Louisiana Worker's Compensation Act , La. R. S.

§ 23:1032, because his claim arose before La. R.S. § 23:1032 was amended in 1952 to include

occupational diseases.  *Id.* at *1.  The court agreed, holding that, as established by the Louisiana

Supreme Court, in long-latency toxic exposure cases, "a plaintiff's claim is governed by the law

in effect at the time his or her cause of action arises."  *Id.* at *2 (citing *Austin v. Abney Mills,

Inc.*, 824 So.2d 1137 (La. 2002).  In *Austin*, the Supreme Court applied the "significant tortious

exposure theory," first announced in *Cole v. Celotex*, for determining when a cause of action

accrues in long-latency occupational disease cases.  *Id.*  Under that theory, a cause of action

arises at the time exposure occurs when the exposure is significant and later results in the

manifestation of damages.  *Id.*  (citing *Austin*, 824 So.2d at 1154).  *Austin* also emphasized the

point, initially stressed in *Cole*, that once a cause of action accrues, it becomes a vested property

right that subsequently enacted law cannot retroactively abrogate.  824 So.2d at 1145; *see also*

*Anderson v. Avondale Indus., Inc.*, 798 So.2d 93, 99 (La. 2001) ("Once a cause of action accrues,

a party has a vested right in the cause of action that a new substantive law cannot take away."

  Therefore, since the Supreme Court's ruling in *Austin*, there can be no state law dispute

that the laws in place when a plaintiff's claim arises, i.e., in Louisiana, when a plaintiff is

significantly exposed to asbestos, are the laws that will govern that claim. The only viable

dispute among the Louisiana Circuits, and the one yet to be settled by the Louisiana Supreme

Court, could be over whether the pre-1975 version of La. R.S. § 23:1031 should be read to cover

diseases that the statute did not specifically enumerate.[7]  There are, of course, two sides to every

dispute, and the Court has found several rulings from the Louisiana First, Third, and Fourth

Circuits that interpret Louisiana law in a way that would support Plaintiffs' cause of action

against Sydney's in state court.

  In *Gautreaux v. Rheem Manufacturing Co.*, the defendant contended by exception of no

cause of action that, under La. R.S. § 23:1031.1(A), the plaintiffs, survivors of a worker who

died from lung cancer as a result of long-term workplace asbestos exposure, had an exclusive

remedy in workers' compensation. 694 So.2d 977, 978 (La. App. 4th Cir. 1996).  Affirming the

---

  [7] The position supported by some Louisiana courts that mesothelioma is a compensable disease under pre-1975 La. R.S. § 23:1031 is reached by more than one statutory inference.  The Louisiana Second Circuit explained in *Adams v. Asbestos Corp. Ltd.* that, although asbestos was not a listed pathogen in La. R.S. § 23:1031 (1952), the statute covered the class of "compound[s] of oxygen and/or metals other than lead" of which asbestos was later discovered to be a member. 914 So.2d 1177, 1183 (La. App. 2d. 2005).  Therefore, according to the Second Circuit, since the Louisiana legislature would have included asbestos as a La. R.S. § 23:1031 substance, it follows that "any disease resulting from contact with asbestos is an occupational disease covered by workers' compensation" even if the legislature did not include the disease in the enumerated list of covered diseases.  *Id.*

trial judge's decision to deny the exception of no cause of action, the Fourth Circuit held that lung cancer was not named in the list of occupational diseases covered by La. R.S. § 23:1031 prior to its 1975 amendment.  *Id.*  Specifically, relying on the affidavit of an expert scientific witness, the court reasoned that the Louisiana legislature did not intend to include asbestos in the list of chemical compounds exposure to which, if resulting in damages, would be remedied by workers' compensation.  *Id.* at 979.[8]  Accordingly, because a substantial portion of the deceased's asbestos exposure took place prior to the 1975 amendment of La. R.S. § 23:1031, the court ruled that plaintiffs had a cause of action against the deceased's employer.  *Id.*; *see also Callaway v. Anco Insulation, Inc.*, 714 So.2d 730, 732 (La. App. 4th Cir. 1998) (holding that prior to its amendment in 1975, La. R.S. § 23:1031.1 "did not include mesothelioma as a covered disease or asbestos as a substance which caused disease [and] the plaintiffs [were] not precluded from pursuing a negligence action against Anco."  The Court relied on the Louisiana Supreme Court's ruling in *Cole v. Celotex* that injury producing events, as well as the law controlling at the time of those events, determine when a cause of action arises.  *Id.* at 731; *see also Martana v. Avondale Indust., Inc.*, 803 So.2d 59 (La. App. 4th Cir. 2001) (in which the court denied applications for supervisory writs filed by the defendant, citing *Cole*, *Gautreaux,* and *Callaway*,

---

[8]La. R.S. § 23:1031.1(A) 1(d) lists oxygen, nitrogen, carbon, and their compounds as disease causing agents for the purpose of workers' compensation coverage.  Although the court noted that asbestos is a compound which contains oxygen, it held that the law did not mean to include all oxygen containing compounds because such a broad meaning would render several other sections of the statute redundant. *Gautreaux*, 694 So.2d at 978.  The court similarly noted that La. R.S. § 23:1031.1(A) 1(d) could not have been intended to cover every compound containing carbon, unless it was read to cover the nearly seven million compounds that do so. *Id.* at 978-99.  Instead, the court ruled that it was more likely that the legislature "intended to include only those compounds which primarily consist of oxygen, nitrogen, or carbon, such as peroxide, ammonia, or methane, and exclude those compounds in which these elements are less predominant and play less of a characteristic functional role, such as asbestos." *Id.*

18

and declining to follow the Louisiana Fifth Circuit's decision in *Brunet*, in holding that plaintiff

had a cause of action for occupational exposure to asbestos that allegedly caused his

mesothelioma.).

Two other Louisiana Circuits concur with the Fourth Circuit's interpretation of La. R.S. §

23:1031.  In *Alexander v. Thiokol Corp*., the Third Circuit provided an extensive analysis of

Louisiana tort and workers' compensation law in Louisiana, resulting in its decision to overturn

the trial court's grant of defendant's peremptory exception of no cause of action.  887 So.2d 685,

690 (La. App. 3d Cir. 2004).  The court sounded a refrain already familiar to Louisiana courts in

2004, that plaintiffs had "contracted, among other things, pneumoniosis, and/or pleural

thickening, a precursor to mesothelioma, clearly **NOT** covered by [La. R.S. § 23:1031] prior to

1975.  *Id.*  (emphasis in original).  Furthermore, at the time Plaintiff/Appellants were exposed to

asbestos and consequently, acquired their right to sue in tort, asbestos was not covered by [La.

R.S. § 23:1031] as a substance that caused disease."  *Id.* at 690.

The most recent statement by a Louisiana court on employers' amenability to suit for

negligent exposure of employees to asbestos comes from the Louisiana First Circuit.  In

*Terrance v. Dow Chemical Co.*, 971 So.2d 1058 (La. App. 1st Cir. 2007), the court held that a

survival action existed for the plaintiff's widow for her deceased husband's exposure to asbestos

occurring between 1964-1970.  *Id.* at 1065-66.  Noting that the Louisiana Supreme Court "has

yet to definitively decide whether mesothelioma fits within the 1952 [workers' compensation]

statute's definition of occupational disease," the court followed its own line of cases as well as

those of the Third and Fourth Circuits, holding that mesothelioma caused by asbestos exposure

was not a compensable injury under the Workers' Compensation Act in effect at the time of

19

plaintiff's husband's exposure.  *Id.* at 1065-66 (citing *Thiokol*, 887 So.2d at 688-89 and

*Gautreaux*, 694 So.2d at 979).[9]  *See also Johnson v. Ashland Oil, Inc.*, 684 So.2d 1156, 1158

(La. App. 1st Cir. 1997) (holding that workers' compensation law, prior to 1975, did not bar tort

claims against employers, brought by survivors of employees exposed to asbestos, for the

development of the occupational disease mesothelioma); *Thomas v. Armstrong World Industries,*

*Inc.*, 676 So.2d 1185 (La. App. 1st Cir. 1996) (recognizing tort cause of action against employer

for lung cancer due to pre-1975 workplace asbestos exposure).

     For the reasons extensively noted above, the Court rejects Defendants' argument that

Louisiana law generally extends workers' compensation immunity to pre-1975 employers.

Accordingly, this Court cannot say with any certainty that Plaintiffs have no claim against

Sydney's in state court.  The Court notes that Defendants' argument, however, is predicated on

the assertion that Sydney's Texaco, Inc. was a corporation newly formed in 1987, that it

constitutes a separate corporate entity from Sydney's the partnership, and that it is thus fully

entitled to the workers' compensation immunities that took effect after the 1975 and 1976

amendments to La. R.S. § 23:1031 and § 23:1032.  Again, the Court disagrees.

     Plaintiffs allege, and Defendants do not dispute, that Sydney's Texaco Inc. is the

corporate successor to Old Sydney's Texaco, a partnership, which was owned and operated by

Joseph and Sydney Bourgeois from 1957 to 1987.  See Rec. Doc. 71-6, p. 3.  Under Louisiana

law,

          a newly organized corporation [will] be liable as the successor of the old . . .
          when the circumstances attending the creation of the new and its succession to the

---

[9] The court also specifically rejected the "rationale in *Brunet* and *Adams* of the fifth and
second circuits" that had precluded negligence suits against employers for asbestos exposure.  *Id.*

business and property of the old were of such a character as to warrant a finding
that the new corporation merely was a continuation of the old.

*LeBlanc v. Adams*, 510 So. 2d 678, 682 (La. App. 4th Cir., 1987); *see also Borque v. Lehmann
Lathe, Inc.*, 476 So.2d 1125, 1127 (La. App. 3d Cir., 1985) (citing *Golden State Bottling Co. v.
NLRB*, 414 U.S. 168 (1073) ("most jurisdictions impose liability, both in contract and in tort, on
a successor corporation . . . when the purchaser is merely a continuation of the selling
corporation").  The "key consideration" in *Borque* was "whether the successor is, in fact, a
'continuation' of the predecessor.  The extent to which predecessor and successor have common
shareholders, directors, officers, or even employees are pertinent considerations."  476 So.2d at
1127; *see also Calmes v. American Banker's Ins. Co.*, 580 So.2d 450, 451-52 (La. App. 5th Cir.,
1991) and *Alomang v. Freeport-McMoran, Inc.*, 811 So.2d 98, 103 (La. App. 4th Cir. 2002)
(discussing corporate successor liability under the continuation doctrine).

In the instant case, Plaintiffs argue that Sydney's Texaco, Inc. is a corporate continuation
of the Old Sydney's, and the record appears to support that position.  Rec. Doc. 71-6, p. 6.  In
1987, Joseph Bourgeois, after the death of Sydney Bourgeois Sr., sold his half of the Old
Sydney's partnership to Sydney Bourgeois Sr.'s heirs, who then formed Sydney's Texaco, Inc.
Rec. Doc. 71-6, p. 3.  The newly organized business continued to operate in the same capacity
and provide the same services as the Old Sydney's and Plaintiff Donald Chiasson's employment
with the incorporated Sydney's did not change.  That the business remained in the Bourgeois
family, serviced the same community, and maintained its predecessor's property interests also
support Plaintiffs' continuation theory.  *See Borque*, 476 So.2d at 1127 (in determining corporate
successor liability, "prior business relationships should be considered, as should the continuity of
the identity of the business in the eyes of the public"). Moreover, Louisiana courts have

recognized the concept of corporate successor liability in asbestos litigation.  *See Hayes v. Eagle Inc.*, 876 So.2d 108, 109 (La. App. 4th Cir. 2004); *Torrejon v. Mobil Oil Co.*, 876 So.2d 877, 881 (La. App. 4th Cir. 2004).  Given the showing by Plaintiffs that Sydney's Texaco, Inc. is a corporate successor to, and continues the rights and liabilities of the former Sydney's partnership, a state court could find that liability attaches to Sydney's Texaco, Inc. for Chiasson's alleged asbestos exposure occurring prior to 1975.

Accordingly, the Court finds that Louisiana law would not necessarily bar Plaintiffs from succeeding on their negligence claims against Sydney's Texaco, Inc.  The majority of Louisiana Circuits, and the overwhelming majority of Louisiana case law, have held that mesothelioma is not covered by pre-1975 La. R.S. § 23:1031.1 and so is not subject to the exclusivity of workers' compensation law.  Moreover, the Louisiana Supreme Court has yet to settle the existing disagreement among the circuits regarding employer liability for asbestos exposure.  The Court notes, however, that the Louisiana Supreme Court has twice expressed the view that the law in place at the time of an employee's substantial exposure to asbestos governs whether or not the employee has a cause of action.  *Cole v. Celotex Corp.*, 599 So.2d 1058, 1065, 1076 (La. 1992); *Austin v. Abney Mills, Inc.*, 824 So.2d 1137, 1144-45 (La. 2002).  After reviewing the substantive law, the Court finds that Plaintiffs may have a cause of action in state court against Sydney's Texaco, Inc. as the corporate successor to the Old Sydney's, especially when the law of Louisiana, though unsettled, is often apparently sympathetic to Plaintiffs' case.

**Conclusion**

The Court finds that Plaintiffs have not improperly joined Sydney's Texaco, Inc., as a non-diverse defendant for the purpose of defeating diversity, and that Plaintiffs' motion to remand is GRANTED.  Rec. Doc. 71.  The issue of whether other nondiverse defendants may be joined is moot.  Rec. Doc. 71.

Accordingly,

IT IS ORDERED this matter is REMANDED to the state court from which it was removed pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

New Orleans, Louisiana, this 29th day of August, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE